## HULL *a.* WHEELER.

*Supreme Court, Sixth District; General Term, November,* 1858.

CONTRACT.—LAW OF PLACE.—EXAMINATION OF PARTIES.—
COMMISSION.

A promissory note, made and indorsed by accommodation indorsers for the maker's benefit, all the parties being residents of this State, and the note being made, dated, and indorsed here, but being drawn payable in Connecticut, was sent by maker, according to previous arrangement, to a person in Connecticut to be discounted, and the proceeds were remitted to the maker here.

*Held,* a Connecticut contract,—to be governed, as against both maker and in-
dorsers, by the usury laws of that State.

That the plaintiff is not the owner and holder of the note in suit, may be proved
under a general denial of the complaint, which alleges that he is.

A party to an action, although a non-resident, is not entitled to be examined upon
commission upon his own behalf, if the adverse party has not given notice of
his own intention to be examined as a witness.

Motion for judgment on a verdict taken subject to the opinion
of the court.

This action was brought upon a promissory note, which was
made and indorsed at Norwich, Chenango county, N. Y., by
residents of that place; and it was in the words and figures fol-
lowing, viz. :

. 1500.                                            NORWICH, November 1, 1856.

Five months from date I promise to pay to the order of
S. R. Perlee, at the Mystic Bank, Connecticut, one thousand five
hundred dollars, for value received.

                         (Signed)     J. R. WHEELER, Jr.

(Indorsed)   S. R. PERLEE,
             N. P. WHEELER,
             T. MILNER.

The plaintiff was a resident of Stonington, Connecticut. The
note was indorsed for the accommodation of the maker, to en-
able him to borrow. He sent it by mail to Jesse Y. Hull, at Ston-
ington, for the purpose of having John W. Hull, the plaintiff, dis-
count it, in pursuance of a previous arrangement. The plain-
tiff let Jesse Y. Hull have $1416.75 for the note, at Stonington,
on the 28th day of November, 1856; and the latter on the same
day sent that money by express to the defendant, at Norwich,
N. Y., where it was received by him.

The amount of money the plaintiff retained as interest on the
note was greater than was permitted by the laws of either New
York or Connecticut. The usury laws of the former State pro-
hibited the plaintiff from recovering any thing on the note, if
it was a New York contract; but if it was a Connecticut con-
tract, the laws of that State permitted the plaintiff to recover
the amount he loaned on the note, without interest.

The making, indorsing, and protest of the note were stated in

the complaint, and it was averred therein that the plaintiff was the owner and holder of the note.

The answer contained a general denial of the allegations in the complaint; and the maker and indorsers of the note each interposed the defence of usury, and insisted that no recovery could be had upon the note by the laws of the State of New York.

The action was tried at the Chenango circuit, in February, 1858.

Some evidence was given that tended to show that the plaintiff was not the owner of the note when the action was commenced.

The defendants were not sworn as witnesses for themselves on the trial, nor had they given any notice of their intention to be witnesses in their own behalf.

The evidence of the plaintiff had been taken by commission in Connecticut, and his deposition was offered on the trial. It was objected to on the ground that the commission was issued before the defendants had given notice of their intention to be witnesses for themselves. The objection was overruled, and the defendant's counsel excepted. The deposition was then read to the jury.

No evidence was given, other than that contained in the note, to show that the indorsers knew, when they put their names upon the note, that the maker intended to borrow money on it in Connecticut.

The judge directed the jury to find a verdict for the plaintiff, subject to the opinion of the court at the general term, for the amount the plaintiff loaned on the note, without interest. And the jury thereupon found a verdict in favor of the plaintiff for $1416.75.

The defendant's counsel excepted to such direction of the judge to the jury.

All other facts necessary to a correct understanding of the questions determined by the general term, are sufficiently stated in the opinion of the court.

*H. R. Mygatt,* for the motion.

*Rexford & Kingsley,* opposed.

By the Court.*—Balcom, J.—I have no doubt but that the validity of the note on which this action is founded must be determined by the laws of the State of Connecticut. It was payable in that State, delivered there, and discounted there by a person who resided there.

When the indorsers put their names upon the note at Norwich, N. Y., for the accommodation of the maker, and gave it back to him, they thereby authorized him to use it for whatever purpose, in his business, he should see fit; and when the maker sent it by mail to Connecticut, the mail carrier became not only his agent, but also that of the indorsers, for its delivery in that State. (See The People a. Rathbun, 21 *Wend.*, 509.) The transaction between the parties is precisely the same, in legal effect, as it would have been if the maker himself had taken the note to Connecticut, and had there personally received the money on it. The fact that the note was dated, signed, and indorsed at Norwich, in this State, does not make it a New York contract; for the reason that it had no validity until it was discounted in Connecticut, and because it was made to obtain money on in that State, from the plaintiff.

If it could be said that the note was delivered in this State, still I think the conclusion would be unavoidable that it was made and discounted in reference to the laws of Connecticut, where it was payable, and where the person who discounted it resided. (See Curtis a. Leavitt, 15 *N. Y.* (1 *E. P. Smith's*) *R.*, 227.) In that case, Paige, J., said: "It is a general rule that the law of the place, where contracts purely personal are made, must govern, as to their validity, *unless they are to be performed in another State or country*, and were made in reference to the laws of such State or country, in which case their construction or validity depends upon the laws of the place of performance." (Many authorities cited.) He also said in the same case: "Where the contract for a loan of moneys is made in one country and payable in another, the parties may stipulate for the payment of interest according to the laws of either country." (Many authorities cited.)

It seems to me that the conclusion is inevitable that the parties to the contract, for the loan upon the note, stipulated for the

---

* Present, Gray, Mason, Balcom, and Campbell, JJ.

payment of interest in reference to the laws of the place where the borrower was to pay back the money to the lender. Any other conclusion would not only make the lender forfeit all the money he loaned—and that, presumptively, with knowledge that he did so when he lent it—but would also stain the character of the maker of the note with the preconceived design of borrowing money without intending to pay back even the principal to the lender. I think the maker does not deserve so harsh an imputation, and that he is entitled to a more lenient construction of his conduct; and that he has endeavored to make out that the right of the plaintiff to get back his money from him, should depend upon the usury laws of this State, instead of those of Connecticut, only by reason of some unforeseen embarrassment in his business, not disclosed by the evidence.

I am of the opinion, however, that the verdict in the action must be set aside, as for a mistrial (see Cobb *a.* Cornish, 16 *N. Y.* (2 *E. P. Smith's*) *R.*, 602 ; S. C., 6 *Abbotts' Pr. R.*, 130 ; Gilbert *a.* Beach, 16 *N. Y.* (2 *E. P. Smith's*) *R.*, 606.), for the following reasons : First. There was enough conflict in the evidence to make it a question of fact for the jury to determine whether the plaintiff or his son, John P. Hull, was the owner of the note at the time of the commencement of the action. This court, at a general term in this district, held, before I came upon the bench, that the fact that the plaintiff was not the owner and holder of the promissory note on which the action was brought, might be proved under a general denial, in an answer to a complaint on the note, similar to the complaint in this action. (Stone *a.* Lackey, MS.) This question, therefore, has been settled in this district in favor of the defendant. Secondly : The deposition of the plaintiff should not have been received as evidence in his own behalf. It was taken in his own behalf by commission in Connecticut, before any notice had been given of the intended examination of either of the defendants. The language of that part of section 399 of the Code which controls this question is, " When notice of such intended examination shall be given in an action or proceeding, in which the opposite party shall reside out of the jurisdiction of the court, *such party* may be examined by commission, issued and executed as now provided by law." This is the only legislative authority there is for the examination of a party to an action in

his own behalf by commission; and by it a party cannot be thus examined until the adverse party has given notice of his intention to offer himself as a witness in is own behalf in the action; consequently the examination of the plaintiff in his own behalf by commission was unauthorized, and his evidence so taken should have been rejected.

Since writing the above, the decision in Fairbanks *a.* Tregent (7 *Abbotts' Pr. R.*, 21) has come to hand, in which Mr. Justice Lott has held, at a special term, that a non-resident party is entitled to be examined upon commission, in his own behalf, although the adverse party has not given any notice of his own examination. If that decision had been made at a general term, I should follow it in this cause, without examining the reasons on which it is based, as implicitly as I would if it had been made at a general term in my own district,—for the reason that we have made no decision at a general term in conflict with it; and I think this court should not make a decision in one district, even at a general term (unless in conformity with some prior general term decision in the same district), contrary to a reported general term decision in another district. But the decision in Fairbanks *a.* Tregent was made at a special term, and it may be reviewed by this court at a general term, in the district where it was made, as we are now reviewing the rulings at the circuit in this cause; and the reasons assigned in that case have failed to convince me that the conclusion arrived at therein is correct: I cannot, therefore, follow it.

By the common law, a party to an action could not be a witness in his own behalf, or for the adverse party; nor could the testimony of any witness be taken at common law, in an action except on the trial, and in the hearing of the court and jury. The authority to issue commissions to take the testimony of witnesses residing out of the jurisdiction of the court was conferred by statute, because parties could not procure the attendance of such witnesses at the trial who were unwilling to attend. Such authority was, therefore, necessary to promote the cause of justice. The statute of 1857 only *permits* parties to actions to testify in their own behalf: it does not *invite* them to do so; and it is seldom necessary for a party to take the stand as a witness in his own behalf, unless his adversary has preceded him as a witness in his own behalf. A party cannot testify in his own

behalf, except in answer to the evidence of his adversary, until he has given at least ten days' notice of his intention so to do. And I think, when the whole of section 399 of the Code is read together, it is evident that the Legislature did not intend to permit a non-resident party to an action to be examined by commission, as a witness in his own behalf, when the other party, by omitting to give notice of his intention to testify in the action, virtually says to him, "I will not offer myself as a witness unless you shall first take the stand, and testify to something against me which I know to be untrue." It seems to me that the Legislature designed to compel the party who intends to testify in his own behalf—when his adversary has no such intention, unless he is obliged to do so in self-defence—to attend the trial in person, and exhibit himself to the court and jury on the witness stand. He is a volunteer witness, and needs no subpœna to compel himself to attend the trial, or commission to enable him to have his evidence there. He can go, if he thinks he will gain thereby; or he can stay away. Whether he will testify for himself, after the trial has been commenced, when present, is left, notwithstanding his notice, entirely to his own volition. A commission for his examination, though he be a non-resident of the State, cannot be said to be *necessary* to the attainment of justice; and I do not believe the Legislature intended to permit the issuing of a commission for the examination of a non-resident party in his own behalf, under such circumstances. The situation of a non-resident party is different who has notice of the intention of his adversary to testify as a witness on the trial in his own behalf. Such a non-resident party is informed by the notice that his adversary will personally attend the trial, and testify against him. Hence he must attend the trial, ready to confront his adversary as a witness in his own behalf, or let his adversary's evidence go unanswered, if his own evidence cannot be taken by commission. It seems to me there is an obvious propriety in permitting such a non-resident party to be examined in his own behalf by commission, in anticipation of what his adversary's evidence will be, if he testifies on the trial. He is not the mover, in bringing the parties upon the stand as witnesses; but acts only in self-defence in testifying in his own behalf. The difference between the position of the moving party towards the witness stand, and that of the party who goes there

merely in self-defence, is sufficient to satisfy me that the Legislature intended, by the language used in section 399 of the Code, to compel the former party to give his evidence orally at the trial, while it permits the other to be examined conditionally by commission, if a non-resident of the State. This construction of that section does no violence to its language, but harmonizes all its parts. I must, therefore, adhere to the opinion I had expressed in this cause prior to seeing the decision in Fairbanks *a.* Tregent.

I think a new trial should be granted in the action, costs to abide the event.

All the justices concurring.

Decision accordingly.